IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| EDWARD CONAWAY,<br><br>   Plaintiff,<br><br>v.<br><br>ERNEST UZICANN ET AL.,<br><br>   Defendants. | Civil Action No. 25-193-BAH |

**MEMORANDUM OPINION**

Self-represented Plaintiff Edward Conaway ("Conaway"), who is currently incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, filed this civil rights complaint pursuant to 42 U.S.C. § 1983, against Defendants Ernest Uzicanin ("Dr. Uzicanin"), Janette Clark ("Clark"), Holly Hoover ("Hoover"), and NBCI alleging that Defendants failed to provide him adequate medical care. ECF 11. Currently pending are Dr. Uzicanin's[1] Motion to Dismiss or, in the Alternative, Motion for Summary Judgement, ECF 22 (motion); ECF 26 (corrected memorandum), Conaway's Argument Motion (ECF 27), Clark and Hoover's Motion to Dismiss or, Alternatively, for Summary Judgment (ECF 34), and Conaway's Motion for Subpoena Duces Tecum (ECF 38). Both dispositive motions are fully briefed and ripe for review.[2] No

---

[1] The Clerk will be directed to amend the docket to reflect the correct spelling of Defendant Dr. Uzicanin's name.

[2] The Court construes Conaway's Argument Motion (ECF 27) as an opposition and it will be considered with Dr. Uzicanin's motion, but will be denied insofar as it seeks oral argument on the motion. Similarly, Conaway's Motion for Subpoena Duces Tecum (ECF 38) does not request the issuance of a subpoena and is denied in that respect, but is nonetheless considered as an opposition as Conaway presents additional reasons why the Court should rule in his favor with respect to Clark and Hoover's motion. The Court will also consider the three "declarations" filed by

hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, Defendants' motions, ECFs 22 and 34, both construed as motions for summary judgment, will be **GRANTED**.

## I. BACKGROUND

### A. Allegations

Conaway asserts that due to Defendants' failure to provide adequate medical care he suffers from fever, chills, and stomach pain following a Urinary Tract Infection ("UTI"). ECF 11, at 4. He claims that his UTI was untreated for two years while incarcerated at NBCI and Western Correctional Institution ("WCI") and he was denied outside treatment or "stronger" pain medications. *Id.* Specifically, he claims Defendant Clark refused any treatment for his UTI on February 6, 2022, at WCI; Defendant Hoover refused him medication during a sick call on April 12, 2024, at NBCI; and Dr. Uzicanin denied him "stronger medications" for his UTI on March 3, 2024. *Id.* Conaway attaches to his Amended Complaint a Request for Administrative Remedy (also known as an "ARP") in which he asserts that he was still sick and that Dr. Uzicanin had promised Conaway would go to the WCI infirmary for IV medications, but Conaway alleges he was never taken for IV medications. ECF 11-2 at 6. Conaway also attaches an ARP saying that despite taking "micro bid 100mgs," his UTI persisted. *Id.* at 12. In his supplement to the Amended Complaint, Conaway explains further that he was prescribed "cipro" but that it was not strong enough to cure his UTI. ECF 13 at 1.

### B. Medical Records and Declarations

Dr. Uzicanin attests that Conaway is highly susceptible to UTIs because of the chronic suprapubic catheter implanted after he suffered a penile avulsion from a 2006 car accident. ECF

---

Conaway, and attachments thereto. ECF 29 (declaration filed on 7/11/25); ECF 36 (declaration filed on 9/2/25); ECF 37 (declaration filed on 9/8/25).

22-5, at ¶ 5; *see* ECF 34-3, at 11–12.  Since 2022, Conaway's chronic UTIs have been treated with oral and intravenous medications, and he has also been evaluated by both urology and infectious disease specialists.  ECF 22-5, at ¶ 4, 6.  Hoover, a certified registered nurse practitioner, attests that because Conaway has an indwelling catheter, there will always be bacteria in his urine.  ECF 34-2, at ¶ 5.  The catheter is changed regularly to minimize the bacteria, but Hoover notes that Conaway has a history of refusing catheter changes.  *Id.*  According to infectious disease specialists, in order to avoid antibiotic resistance, Conaway only needs antibiotics for UTIs if he is symptomatic.  *Id.*  Conaway's alleged refusals of care contribute to the frequency and severity of his UTIs.  *Id.* at ¶ 24.

As of December 13, 2023, Conaway's catheter was being changed every four weeks.  ECF 34-3, at 7.  Conaway reported to Dr. Nilesh Tejura, an infectious disease specialist, that his UTIs were recurring, most recently in August of 2023, and that he was experiencing suprapubic pain and had dark sedimentation in his urine.  *Id.*  Dr. Tejura noted that a urine culture on November 30, 2023, grew *K. pneumoniae*, a multi-drug-resistant ("MDR") bacteria, resulting in Conaway's admission to the infirmary.  *Id.*  Conaway received three doses of piperacillin-tazobactam on December 7, 2023, and then received Fosfomycin, the only active oral antimicrobial agent effective for *K. pneumoniae. Id.* at 7, 9.  Dr. Tejura ordered completion of the Fosfomycin course, exchange of Conaway's catheter to avoid a recurrent infection, and a follow-up appointment in two weeks.  *Id.* at 9.

Conaway returned for a provider visit on December 20, 2023 with Dr. Dhimitri Gross.  ECF 34-3, at 2–6.  Conaway reported that his pain was being managed by the prescribed medications but that his UTI had not yet been fully resolved.  *Id.* at 2.  Conaway stated that he still needed to receive two doses of Fosfomycin.  *Id.*  Dr. Gross ordered that he receive these additional

3

doses and that a "urinalysis with reflex to culture" be conducted to confirm that the UTI was completely resolved. *Id.* at 4–5. According to custody staff, on January 10, 2024, Conaway did not appear for a telemedicine visit with Dr. Tejura because he refused to attend the appointment. ECF 34-5 at 17. Conaway's Lyrica prescription for pain was also discontinued in January for non-compliance. *Id.* at 16.

Dr. Gross saw Conaway again in the chronic care clinic on January 24, 2024. ECF 34-5, at 11–15. Conaway had received all Fosfomycin doses but reported that his symptoms were flaring up. *Id.* at 11. Conaway also complained that he had not seen a urologist since he was housed at Western Correctional Institution more than two years prior. *Id.* Dr. Gross assessed an ongoing UTI and prescribed another round of Fosfomycin to treat it. *Id.* at 14. He also submitted a consultation request for Conaway to be seen at University of Maryland Medical System ("UMMS") Urology, which was approved and scheduled for May 21, 2024. *Id.* at 7–10, 14, 32–33. Dr. Gross entered an administrative note on January 31, 2024 attesting that Conaway's urine culture contained *K. pneumoniae* yet again. *Id.* at 6. An infectious disease provider recommended IV meropenem to Dr. Gross based on Conaway's history, a treatment which would require admission to the infirmary. *Id.* Conaway initially refused the IV antibiotics but after an appointment on February 8, 2024 with Dr. Gross, he agreed to a seven-day course. *Id.* at 1-5, 21; ECF 34-4, at 33-34.

Beverly McLaughlin, a nurse practitioner, saw Conaway on February 11, 2024, his fourth day in the infirmary. ECF 34-4, at 30–31. Conaway complained to McLaughlin that the staff was harassing him and his IV had been left in overnight. *Id.* at 31. McLaughlin notes that Conaway became agitated during the conversation, called her "dumb," and threatened to have his sister beat her up. *Id.* McLaughlin and the other staff present exited the room with Conaway's IV pole, and

McLaughlin later opined that Conaway's admission to the infirmary may have exacerbated any mental illness he was experiencing. *Id.* Conaway, who eventually reported improvement, was discharged back to NBCI. *Id.*

On February 14, 2024, Conaway had a telemedicine visit with Dr. Tejura. ECF 34-4, at 23–26. Conaway reported that the IV antibiotics caused him to have watery stool and that his chills and lower back pain persisted. *Id.* at 23. Conaway reported that his catheter had been changed four weeks earlier. *Id.* Dr. Tejura explained to Conaway that his infection could only be treated with IV antibiotics, with meropenem as the preferred antibiotic, and that he needed to complete the full seven-day course. *Id.* at 25. Conaway agreed to be readmitted to the infirmary. *Id.* Dr. Tejura's notes reference speaking with Assistant Director of Nursing Kristine Swick about Conaway's behavior during his previous admission and Swick stated that she was going to relay her concerns to custody staff. *Id.* Dr. Tejura ordered a change of Conaway's catheter, a follow-up appointment after completion of the antibiotics, and a repeated urine culture. *Id.*

Conaway was admitted to the infirmary on February 15, 2024, and saw Clark, a nurse practitioner, during rounds. ECF 34-4, at 20–21. Clark reassured Conaway that medical staff would try their best to disconnect his IV as soon as his dose was completed but explained that it may not be immediate due to the number of patients being treated. *Id.* at 20. Clark left, noting that Conaway seemed receptive to the information. *Id.* While she was with another patient she was notified that Conaway wanted to leave the infirmary and was "heard kicking his cell door and yelling." *Id.* Conaway complained that the cell was dirty, the water was turned off, and alleged that he had not received any meals. *Id.* Clark attempted to explain that the cell had been cleaned and that the water would be turned on and had only been turned off due to a previous patient. *Id.* Clark noted that custody staff reported that Conaway was threatening the infirmary inmate worker

and so Conaway's meal-delivery slot was closed. *Id.* Clark explained the risks of refusing treatment, but Conaway still wanted to leave and signed a release of responsibility form. *Id.*; ECF 34-6, at 36.

On February 25, 2024, Conaway complained of UTI symptoms and asked to see a provider. ECF 34-4, at 17–19. Registered nurse Ernest Massalla noted that a urine dipstick did not show any significant findings. *Id.* at 18. Conaway purportedly stated that he "won't go to WCI for any IV [] treatment" but instead wanted to see a provider, and Massalla agreed to let him see a provider. *Id.*

Dr. Uzicanin denies seeing Conaway for medical treatment on March 3, 2024. ECF 22-5, at 3 ¶ 7. The medical records reflect that Dr. Uzicanin did see Conaway a few weeks later, on March 29, 2024, to address the reported UTI. ECF 34-4, at 12–15. Dr. Uzicanin prescribed Conaway doxycycline, an antibiotic, as well as Lyrica for chronic pain. *Id.* at 14–15.

Conaway returned to chronic care on April 11, 2024, and reported to Hoover that he needed a urinalysis because he believed he had a UTI. ECF 34-4, at 5. Hoover attests that she ordered a urinalysis, urine culture, and blood work, and stated that she also educated Conaway on increasing fluid intake. ECF 34-2, at 6–7 ¶ 16. Hoover otherwise continued Conaway's treatment plan which included antifungal cream, Azo cranberry tabs, doxycycline, Mobic, perphenazine, prazosin, Lyrica, and Zoloft. *Id.* Conaway also had his catheter changed that day. *Id.* Hoover denies seeing Conaway on April 12, 2024, as he alleges in the amended complaint, and instead says the visit was on April 11, 2024. *Id.* at 7 ¶ 17. She states that there was no stronger medication she could provide because he refused to return to the infirmary for IV antibiotics. *Id.* Hoover explains that UTIs are not always treated with antibiotics, and because Conaway did not have fever, chills, body aches, cloudy urine, or other associated symptoms, she did not believe that antibiotics were necessary.

6

*Id.* She says that did not prescribe an antibiotic herself, but she also did not discontinue Conaway's current course of doxycycline because doing so would contribute to his antibiotic resistance. *Id.*

Conaway had a UMMS Urology visit with Dr. Michael Naslund on May 21, 2024. ECF 34-5, at 27–30. Dr. Naslund noted that Conaway reported a UTI but was "vague with his symptoms." *Id.* at 29. Dr. Naslund ordered another urine culture, prescribed Bactrim, and recommended an abdomen/pelvis CT without contrast. *Id.* at 30. The urine culture came back positive for *K. pneumoniae*. *Id.* at 27. Hoover saw Conaway for a follow-up appointment on June 3, 2024, at which time Conaway was asymptomatic after the Bactrim course. ECF 34-3, at 30. Hoover submitted consultation requests for a follow-up urology appointment and a CT, both of which were approved. *Id.* at 24–29, 33; ECF 34-6, at 10, 24. The CT showed constipation and a distended stomach but no bowel obstruction. ECF 34-5, at 25.

On July 11, 2024, Hoover entered a chart update reflecting that Conaway's Lyrica prescription was discontinued again for non-compliance. ECF 34-3, at 19–20. The following day Conaway was scheduled to see Hoover, however she witnessed Conaway "screaming and cussing at the escorting officers on the way to the medical department." *Id.* at 16. Conaway also allegedly was spitting and swearing at staff, so the appointment was terminated due to "safety concerns." *Id.* When registered nurse Chaslynne Morton attempted to change Conaway's catheter on July 25, 2024, he cursed at her and told her to leave. *Id.* at 13–15. Hoover states that her employer's contract with the Department of Public Safety and Correctional Services ended on July 31, 2024. ECF 34-2, at 9 ¶ 23.

## II. LEGAL STANDARDS

Defendants argue that the amended complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), or, alternatively, that summary judgment should be granted in their favor pursuant to

7

Fed. R. Civ. P. 56.  *See* ECF 22-1; ECF 34-1.  A motion to dismiss styled in the alternative as a motion for summary judgment implicates the Court's discretion under Fed. R. Civ. P. 12(d).  *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011).  Conversion of a motion to dismiss to one for summary judgment is permissible where a plaintiff has notice that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).  When a movant expressly captions its motion to dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur as the Court "does not have an obligation to notify parties of the obvious."  *Id.* at 261; *see also Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 657 (D. Md. 2021) ("Notably, 'the Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion.'" (quoting *Ridgell v. Astrue*, Civ. No. DKC 10-3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012))).

Because Defendants filed their motions as motions to dismiss or, in the alternative, for summary judgment, Conaway was on notice that the Court could treat the motions as ones for summary judgment and rule on that basis.  Moreover, Conaway was sent Rule 12/56 notices reflecting the filing of motions to dismiss or for summary judgment.  ECF 23; ECF 35.  Accordingly, the Court will review Conaway's claims against Defendants under the Rule 56(a) standard and will consider the parties' exhibits where appropriate.

Rule 56 provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)

(quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  "[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255) (second alteration in original).  At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

The Court is mindful that Conaway is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But liberal construction does not mean that a court can "ignore an obvious failure to allege facts setting forth a plausible claim for relief." *Sheehan v. Saoud*, 650 F. App'x 143, 152 (4th Cir. 2016) (citing *Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990)).  A court cannot assume the existence of a genuine issue of material fact where none exists.  Fed. R. Civ. P. 56(c).

## III. DISCUSSION

Defendants assert that they are entitled to judgment in their favor because Conaway has failed to demonstrate deliberate indifference under the Eighth Amendment.  ECF 26 at 9-13; ECF 34-1 at 15-17.  The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153,

9

173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834–38 (1994); *see also Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King*, 825 F.3d at 218; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see, e.g.*, *Scinto*, 841 F.3d at 228 (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

10

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839–40. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

NPs Clark and Hoover concede that Conaway's UTIs presented an objectively serious medical need. ECF 34-1, at 15. Dr. Uzicanin does not address this element of Conaway's claims in his motion. Therefore, the Court will assume that Conaway has established a serious medical need. Regardless, even viewing the evidence in the light most favorable to Conaway, the Court finds that there is no genuine dispute of material fact and Conaway's claims fail.

Conaway's claim that he was denied medical treatment for his UTIs for two years is directly contradicted by his medical records. The undisputed records reflect that he was neither denied treatment for his UTIs nor prevented from seeing outside medical providers. As to Dr. Uzicanin, there is no evidence in the record that he denied Conaway treatment. During the relevant time period, Dr. Uzicanin saw Conaway at least once, determined that Conaway had a UTI, and prescribed him an antibiotic to treat it.

To the extent that Conaway is asserting that Dr. Uzicanin should have prescribed an IV antibiotic, he raises a disagreement over the course of treatment which is insufficient to establish deliberate indifference. The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (emphasis added) (quoting *Bowring v. Godwin*, 551 F.2d 44, 47–48 (4th Cir. 1977)). "[A]n inadvertent failure to provide adequate medical care" does not amount to deliberate indifference." *Estelle*, 429 U.S. at 105–06; *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)); *accord Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) ("[W]e consistently have found such disagreements to fall short of showing deliberate indifference."). Conaway fails to allege exceptional circumstances that would elevate a dispute over the course of his treatment to one establishing deliberate indifference.[3] Dr. Uzicanin is entitled to summary judgement.

Similarly, the record does not support Conaway's claims against Clark. Clark encountered Conaway on his second trip to the WCI infirmary for IV antibiotics. After being reassured that the staff would do their best to remove his IV immediately after his doses were completed, records reflect that Conaway still refused treatment. Records also reflect that Clark

---

[3] The Court also notes that, based on the record, it appears reasonable for Dr. Uzicanin to prescribe an oral antibiotic given that records reflect Conaway's repeated refusal to complete prescribed IV antibiotics.

explained the consequences of refusing care before discharging Conaway back to NBCI. Clark was clearly aware of the risks to Conaway's health as undisputed records reflect that she explained them to him. Simply stated, the record reflects that Clark did not disregard that risk, rather Conaway refused treatment. Clark did not act with deliberate indifference and therefore she is entitled to summary judgment.

Finally, the record establishes that Conaway's claims against Hoover amount to disagreements with the course of prescribed treatment. When Hoover saw Conaway, he was already on a course of antibiotics prescribed by Dr. Uzicanin. Notably, records reflect that he was asymptomatic when Hoover saw him and thus there was no basis for her to think Conaway needed a different treatment from what he was currently receiving. Again, based on Conaway's history, nothing in the record shows that Conaway had changed his opinion about receiving IV antibiotics and thus it was hardly improper for Hoover to continue them, and the record affirms Hoover's contention that she made the decision she believed best in order to avoid further antibiotic resistance. Hoover also referred Conaway to an outside urologist for an updated evaluation and got approval for an abdominal CT. During their final interaction, there is no dispute that Conaway's behavior presented a safety concern causing the appointment to be terminated. Nothing suggests that Hoover ignored Conaway's needs nor acted recklessly in treating Conaway's chronic UTIs. As such, Hoover is also entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss or, in the Alternative, Motion for Summary Judgment, construed as motions for summary judgment, will be **GRANTED**. Any

state law claim raised by Conaway will be dismissed without prejudice.[4]  Conaway's motion for argument will be **DENIED** as moot but was considered as an opposition to Defendants' dispositive motions.  His motion for the issuance of a subpoena is also **DENIED** but was likewise considered as an opposition.

      A separate implementing order will issue.


Dated: February 25, 2026                                                                          /s/
                                                                                     Brendan A. Hurson
                                                                                     United States District Judge

---

[4] "When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966).  As such, to the extent Conaway raises negligence or medical malpractice claims, the Court declines to retain its supplemental jurisdiction.